IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ERICA L. PRICE,                          Case No. 6:10-cv-06181-AA
                                              OPINION AND ORDER
          Plaintiff,

     v.

CITY OF SUTHERLIN, a
municipality; MICHAEL
MAHLER, individually; JAY
HUSKEY, individually; BEN
WOODWARD, individually;
and JOE FELIX, individually;

          Defendants.

_____

James D. Vick
Rick J. Glantz
Vick and Glantz, LLP
201 Ferry St. S.E., Suite 200
Salem, Oregon 97301

Michelle R. Burrows
Michelle R. Burrows, PC
22586 S.W. Park St.
Sherwood, Oregon 97140
     Attorneys for plaintiff

Gerald L. Warren
Attorney At Law
901 Capitol St. N.E.
Salem, Oregon 97301
     Attorney for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants Joe Felix, Jay Huskey, Michael Mahler, Ben Woodward, and the City of Sutherlin ("City") move for summary judgment on plaintiff Erica Price's claims pursuant to Fed. R. Civ. R. 56. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

On October 27, 2009, at approximately 3:45pm and after consuming an unknown quantity of alcohol, plaintiff left her residence to drink at a local bar. Within thirty minutes of her arrival, plaintiff was asked to leave the bar because she was intoxicated and belligerent towards other patrons. Ryan Fulton, with whom plaintiff was romantically involved at all relevant times, was driving around looking for plaintiff and located her outside of the bar. Fulton asked plaintiff to get into his car and she complied. Thereafter, plaintiff attempted to leap from Fulton's moving vehicle. Fulton was able to physically prevent her from exiting the car and subsequently parked in order to let plaintiff out.

A Sutherlin Fire Department truck was traveling behind Fulton's vehicle and witnessed Fulton's physical restraint of plaintiff. Fire truck personnel reported the incident to Douglas County Communications and Officer Woodward was dispatched to the scene. Plaintiff's adult daughter, Angela Price, and mother were also in the area. Price agreed to take care of plaintiff and plaintiff agreed to pour out any remaining alcohol; as such, Officer Woodward left plaintiff with her mother and daughter.

Shortly after reaching Price's apartment, plaintiff left to

Page 2 - OPINION AND ORDER

buy more alcohol against her daughter's wishes. After purchasing a six-pack of beer, plaintiff walked around looking for Steven Brown, with whom she had spoken to earlier outside of the bar. Plaintiff eventually located Brown and, at approximately 6:30pm, went to his apartment, where she drank beer and several ounces of whiskey. Plaintiff then became "weird" and Brown asked her to leave. While Brown was escorting her back to Price's apartment, which was nearby, plaintiff tripped and fell twice after nearly walking into oncoming traffic, causing her nose and mouth to bleed.

Fulton, who had been looking for plaintiff, located her with Brown within a block of Price's residence. Brown suggested that plaintiff be taken to the hospital but Fulton declined and instead took plaintiff back to Price's apartment. Once there, Fulton immediately ushered plaintiff into the bathroom, closed the door, and attended to her injuries. Simultaneously, Price called 911 to request medical assistance. Officer Huskey was dispatched in response to that call.

At approximately 7:43pm, Officer Huskey arrived at Price's apartment; as he entered, Officer Huskey heard scuffling from behind the closed bathroom door and immediately drew his Taser. He observed two sets of feet upon opening the bathroom door and recognized one set as belonging to Fulton. With his Taser drawn, Officer Huskey ordered plaintiff and Fulton to get down on the ground. Neither complied with Officer Huskey's commands. Officer Huskey then turned on his Taser, thereby activating the Taser's video camera, and plaintiff staggered towards him. Fulton managed to block plaintiff and pull her back into the bathroom. Officer Huskey holstered his Taser and ordered Fulton out of the bathroom;

Page 3 - OPINION AND ORDER

Fulton complied.  Officer Huskey then ordered plaintiff to get down on the ground several times but she refused to comply and instead exited the bathroom.   Immediately and without warning, Officer Huskey tased plaintiff, who fell backwards, hit her head on the bathroom's concrete floor, and was rendered unconscious.   Officer Huskey then advised medics that the location was secure and issued plaintiff a citation for interfering with a peace officer pursuant to Or. Rev. Stat. § 162.247.   At approximately 7:46pm, back-up Officer Ryan Cross, from the Douglas County Sheriff's Department, arrived on scene.

The following day, on October 28, 2009, Chief Mahler sent a letter to the Douglas County Sheriff's Office requesting an independent review of Officer Huskey's actions.  The investigation concluded that Officer Huskey's conduct was appropriate under the circumstances.   On April 15, 2010, plaintiff sent a letter to the City Prosecutor, Leeon Aller, requesting dismissal of the criminal charge for interfering with a peace officer.  On May 5, 2010, Aller offered to dismiss the charge with prejudice if plaintiff abandoned any claims against the City.  Plaintiff ultimately participated in a municipal court diversion program and, on December 9, 2010, the charge was dismissed with prejudice.[1]

On July 6, 2010, plaintiff filed a complaint in this Court, which was subsequently amended twice.  On December 16, 2011, with leave from the Court, plaintiff filed her third amended complaint

---

[1] Plaintiff requests judicial notice of this dismissal.  See Vick Decl. Ex. 17.   Because it is part of the public record and therefore not subject to reasonable dispute, plaintiff's request is granted.  See Fed. R. Evid. 201(b); Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

("TAC"), alleging the following claims under 42 U.S.C. § 1983 and Oregon law: (1) unreasonable seizure, in violation of her Fourth Amendment rights, against Officer Huskey; (2) excessive force, in violation of her Fourth Amendment rights, against Officer Huskey; (3) tortious assault against Officer Huskey; (4) tortious battery against Officer Huskey; (5) failure to protect, in violation of her Fourth and Fourteenth Amendment rights, against Officer Woodward; (6) failure to supervise, in violation of her Fourth and Fourteenth Amendment rights, against Chief Mahler; (7) ratification of illegal police conduct, in violation of her Fourth and Fourteenth Amendment rights, against Chief Mahler; (8) failure to supervise, in violation of her Fourth and Fourteenth Amendment rights, against Sergeant Felix; (9) illegal municipal policy or custom, in violation of her Fourth and Fourteenth Amendment rights, against the City; (10) failure to train, in violation of her Fourth and Fourteenth Amendment rights, against the City; (11) ratification of illegal police conduct, in violation of her Fourth and Fourteenth Amendment rights, against the City; and (12) malicious prosecution against Officer Huskey and the City.[2]

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the

---

[2] Plaintiff also alleges a thirteenth claim against John Doe defendants; however, because she "stipulates to dismiss" this claim, defendants' motion is granted in this regard. Pl.'s Resp. to Mot. Summ. J. 8.

materiality of a fact.  T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.

## DISCUSSION

This dispute centers on whether defendants' alleged conduct violated plaintiff's constitutional rights.  Defendants argue that they are entitled to summary judgment because: (1) Officer Huskey had probable cause to cite plaintiff and to use force in effectuating her arrest or, alternatively, is shielded by qualified immunity[3] because the confines of Taser usage were not clearly

---

[3] Defendants assert an entitlement to qualified immunity "on behalf of all individually-named defendants [but] only address specifically the claims against Officer Huskey."  Defs.' Mem. in Supp. Mot. Summ. J. 29.  Accordingly, the Court will only analyze the applicability of this defense in regard to Officer Huskey's actions.

established until 2010; and (2) plaintiff's remaining claims fail as a matter of law.

I.    <u>Claims Against Officer Huskey</u>

Plaintiff asserts that Officer Huskey violated her Fourth Amendment rights because he did not have consent to enter Price's apartment, such that his subsequent commands were unlawful and his issuance of a criminal citation was without probable cause. Plaintiff also contends that, regardless of whether probable cause existed, Officer Huskey's use of force was excessive under the circumstances and resulted in the violation of her Fourth Amendment rights, as well as tortious assault and battery.

A.    <u>Federal Claims</u>

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted). It is undisputed that all defendants qualify as state actors for the purposes of 42 U.S.C. § 1983.

i.    <u>Unreasonable Seizure Claim</u>

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied." <u>Brendlin v. Cal.</u>, 551 U.S. 249, 254 (2007) (emphasis, citations, and internal quotations omitted). Nevertheless, a warrantless seizure "does not violate the Fourth Amendment if the officers had probable cause." <u>Picray v. Sealock</u>,

Page 7 - OPINION AND ORDER

138 F.3d 767, 770 (9th Cir. 1998) (citation omitted). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." Dubner v. City & Cnty. of S.F., 266 F.3d 959, 966 (9th Cir. 2001) (citation omitted). The plaintiff bears the burden of establishing each element of a 42 U.S.C. § 1983 claim, including the lack of consent. See Pavao v. Pagay 307 F.3d 915, 919 (9th Cir. 2002). The court considers the totality of the circumstances in determining whether consent was given. Id.

It is undisputed that plaintiff was intentionally seized by Officer Huskey without a warrant for interfering with a peace officer. Defendants, however, provided uncontradicted evidence that Officer Huskey was dispatched to Price's apartment in response to a 911 call and was required to clear the scene before medical personnel could enter the residence. See Vick Decl. Ex. 10, at 5; Huskey Decl. ¶ 2. When he arrived, Officer Huskey knocked and identified himself as a City police officer; Price opened the door and Officer Huskey entered the apartment. See Vick Decl. Ex. 12, at 6; see also Huskey Decl. ¶ 3; Vick Decl. Ex. 10, at 6. In addition, it is undisputed that Price did not limit her 911 request to medical personnel only and neither she nor any other occupant objected to Officer Huskey's presence once he was inside the apartment. Therefore, based on the totality of the circumstances, Officer Huskey had implied consent to enter Price's apartment. See Pavao, 307 F.3d at 920-21 (implied consent existed where a police officer responded to an emergency 911 call and the resident opened the front door, and subsequently failed to object to the officer's

Page 8 - OPINION AND ORDER

entry).

Accordingly, because Officer Huskey was lawfully within the residence, whether he violated plaintiff's Fourth Amendment rights by citing her for interfering with a peace officer hinges on the existence of probable cause. A person commits this crime if he or she "know[s] that another person is a peace officer [and] [r]efuses to obey a lawful order by the peace officer." Or. Rev. Stat. § 162.247. Here, plaintiff had knowledge[4] that Officer Huskey was a "peace officer" within the meaning of the statute because he was wearing his police uniform and identified himself as a police officer. See Vick Decl. Ex. 12, at 6; see also Or. Rev. Stat. § 181.610. Further, the video evidence captures plaintiff's noncompliance with Officer Huskey's repeated commands to get down on the ground. See Vick Decl. Ex. 1; see also Huskey Decl. ¶¶ 6, 8.

Thus, the record reveals that plaintiff repeatedly refused to obey Officer Huskey's lawful orders in violation of Or. Rev. Stat. § 162.247. Officer Huskey therefore had probable cause to believe that plaintiff was committing the crime of interfering with a peace officer. Even assuming that he did not have probable cause to charge plaintiff, Officer Huskey nonetheless reasonably could have believed he did and therefore is shielded by qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also

---

[4] The Court is mindful of the fact that plaintiff was extremely intoxicated by the time she was interfacing with Officer Huskey. Plaintiff, however, does not argue, nor can she, that her voluntary intoxication precluded the existence of probable cause in this context. See generally Pl.'s Resp. to Mot. Summ. J.; see also Or. Rev. Stat. § 161.125(1).

Denucci v. Henningsen, 248 Or.App. 59, 70-78, 273 P.3d 148 (2012)
(qualified immunity attached where the plaintiff was arrested,
despite the fact that she was physically compliant with the police
officer's orders to stay back, because she was yelling).
Therefore, defendants' motion is granted and plaintiff's
unreasonable seizure claim is dismissed.

### ii.  Excessive Force Claim

Qualified immunity shields government officials from civil
liability "insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  Harlow, 457 U.S. at 818
(citations omitted).  To determine whether a government actor is
entitled to qualified immunity, the court determines whether: (1)
the alleged misconduct violated a right; and (2) that right was
clearly established at the time of the alleged misconduct.  Pearson
v. Callahan, 555 U.S. 223, 236 (2009).  In other words, if the
government actor reasonably believed that his or her conduct
complies with the law, summary judgment based on qualified immunity
is appropriate.  Id. at 244; see also Anderson v. Creighton, 483
U.S. 635, 640 (1987).

### a.  Whether Plaintiff's Rights Were Violated

Fourth Amendment excessive force claims are examined under the
reasonableness standard and the framework outlined by the Supreme
Court in Graham v. Connor, 490 U.S. 386 (1989).  See Smith v. City
of Hemet, 394 F.3d 689, 700 (9th Cir.) (en banc), cert. denied, 545
U.S. 1128 (2005).  The inquiry turns on whether the officer's
actions are "objectively reasonable" in light of the facts and
circumstances confronting him, without regard to the officer's

Page 10 - OPINION AND ORDER

underlying intent or motivation. <u>Graham</u>, 490 U.S. at 397. The court first considers the nature and quality of the alleged intrusion, and then examines the governmental interests at stake by analyzing: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. <u>See</u> <u>Mattos</u>, 661 F.3d at 441 (citation omitted). These factors are not exclusive; rather, the court must "look to whatever specific factors may be appropriate in a particular case, whether or not listed in <u>Graham</u>." <u>Franklin v. Foxworth</u>, 31 F.3d 873, 876 (9th Cir. 1994). "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly." <u>Smith</u>, 394 F.3d at 701 (citation and internal quotations omitted).

Turning first to the type and amount of force inflicted, Officer Huskey tased plaintiff at close-range. <u>See</u> Vick Decl. Ex. 1; Huskey Decl. ¶ 8. This use of force was painful and significant enough to provoke a grave physical injury; it knocked plaintiff off her feet, causing her to fall backwards and hit her head. <u>See</u> <u>Kaady v. City of Sandy</u>, 2008 WL 5111101, *16 (D.Or. Nov. 26, 2008) (while non-lethal, "being shocked by a Taser is a painful experience [and therefore] constitutes an intermediate level of force and a significant intrusion on a victim's Fourth Amendment rights"); <u>Bryan v. MacPherson</u>, 630 F.3d 805, 824-26 (9th Cir. 2010) ("[t]he physiological effects, the high levels of pain, and foreseeable risk of physical injury lead us to conclude that

Page 11 - OPINION AND ORDER

[Tasers] constitute an intermediate or medium, though not insignificant, quantum of force") (citations and internal quotations omitted).

Looking next at the governmental interests at stake, the Court finds that all three Graham factors weigh in plaintiff's favor. First, plaintiff's violation of Or. Rev. Stat. § 162.247 is not a severe crime. See Hadley v. City of Beaverton, 2010 WL 1257609, *11 (D.Or. Feb. 16), adopted by 2010 WL 1257610 (D.Or. Mar. 25, 2010).

Second, and "most important[ly]," plaintiff did not pose an immediate threat to the safety of Officer Huskey[5] or others. Mattos, 661 F.3d at 441 (citation omitted). Contrary to defendants' assertion, the events leading up to Officer Huskey's deployment of his Taser did not occur in a single, fluid manner. Rather, the video evidence demonstrates that over 20 seconds elapsed after plaintiff advanced towards Officer Huskey. During this time, plaintiff reentered the bathroom with Fulton and upon exiting, was slightly turned away from Officer Huskey and walking slowly without clenched fists. See Vick Decl. Ex. 1. In other words, at the moment he deployed his Taser, plaintiff was neither displaying aggression nor moving towards Officer Huskey in a threatening manner. Id. Further, on the night in question, plaintiff stood five feet tall and weighed approximately 120

---

[5] Officer Huskey testified that he "felt [plaintiff] was a threat to me." Huskey Decl. ¶ 8. "However, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern," factors which are not present in the case at bar. Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001), cert. denied, 536 U.S. 958 (2002).

pounds, and Officer Huskey was five feet, eight inches tall and weighed approximately 200 pounds; Fulton, who was six feet, four inches tall and approximately 230 pounds, testified that he had adequate control over plaintiff and only released her pursuant to Officer Huskey's order. See Vick Decl. Ex. 9, at 9-10; Huskey Decl. ¶ 5.

Third, plaintiff's noncompliance with Officer Huskey's commands to get down on the ground, unlike brandishing a weapon or actively struggling with an officer attempting to perform his or her duties, does not rise to the level of actively resisting arrest. See, e.g., Young v. Cnty. of L.A., 655 F.3d 1156, 1165-66 (9th Cir. 2011); Smith, 394 F.3d at 703. Moreover, plaintiff was secured within Price's residence at the time she was tased and there is no indication that she was attempting to flee the scene.

Additional factors weigh in plaintiff's favor. For instance, Officer Huskey failed to warn plaintiff before deploying his Taser. While the failure to warn, alone, is insufficient to establish Officer Huskey's liability, it does militate a finding that such force was not objectively reasonable. See Bryan, 630 F.3d at 831 (citations omitted); see also Vick Decl. Ex. 1. Officer Huskey had time to reassess the situation and consider whether the application of force was necessary; in fact, he testified to evaluating alternative methods to subdue plaintiff but chose to tase her because she was "covered in blood." Huskey Decl. ¶¶ 7, 12. Officer Huskey's statements, combined with the video evidence, contradict defendants' assertion that a rapidly evolving situation, requiring split second decisions, existed. Finally, while Officer Huskey is not required to use the "least intrusive" method, he

Page 13 - OPINION AND ORDER

nonetheless was required to "consider less intrusive methods"; in the case at bar, there were clear, reasonable, and less intrusive alternatives available.  See Bryan, 630 F.3d at 831 n.15.

Therefore, while the Court acknowledges that he was initially the only officer on-scene and, additionally, plaintiff was relatively culpable due to her excessive alcohol consumption, no reasonable jury could conclude that Officer Huskey's actions were objectively reasonable based on the totality of the circumstances.[6] See Young, 655 F.3d at 1165-66 (when "a suspect's disobedience of a police officer takes the form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others, it will not, without more, give rise to a governmental interest in the use of significant force").

    b.   Whether the Right Was Clearly Established

The second prong of the qualified immunity analysis concerns whether the deputies had "fair warning" that the force used on a plaintiff was excessive.  See Hope v. Pelzer, 536 U.S. 730, 740 (2002).  "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."  Id. at 741.

---

[6] Defendants object to the admissibility of plaintiff's expert report to the extent that its author, D.P. Van Blaricom, concludes "the use of force Huskey employed was not reasonable." Defs.' Reply to Mot. Summ. J. 2 (citation omitted).  Defendants also object to the admissibility of plaintiff's declaration, which contains personal statements regarding her struggle with sobriety; plaintiff did not file a sur-reply to defendants' evidentiary objections.  See LR 56-1.  Because the Court did not rely on plaintiff's declaration or Van Blaricom's legal conclusions, defendants' objections are denied as moot.  See Or. Natural Desert Ass'n v. Sabo, 854 F.Supp.2d 889, 925 (D.Or. 2012); Kaady, 2008 WL 5111101 at *9.

Page 14 - OPINION AND ORDER

While defendants are correct that, prior to the events in question, neither the Supreme Court nor the Ninth Circuit had fully examined an officer's use of a Taser, it was nonetheless clearly established that "force is only justified when there is a need for force." Blankenhorn v. City of Orange, 485 F.3d 463, 481 (9th Cir. 2007) (citing Graham, 490 U.S. 386). Viewing the facts in the light most favorable to plaintiff, a reasonable officer would have had "fair warning" that the use of painful, albeit non-lethal, force to restrain or subdue a non-threatening, nonresistant, unarmed suspect was excessive. See, e.g., Kaady v. City, 2008 WL 5111101 at *19-21 ("the law [was] clearly established [because as] of September 2005 police officers had reasonable notice that they may not use a Taser against an individual suspect who does not pose a threat and has merely failed to comply with commands"); Silvestre v. Noffsinger, 2010 WL 3893581, *2-4 (D.Or. Sept. 29, 2010) (declining to extend qualified immunity under similar circumstances that transpired in 2007); Terhune v. City of Salem, 2013 WL 1363020, *1-2 (D.Or. Apr. 1, 2013) (same, except events occurred in 2009). Therefore, defendants' motion is denied as to plaintiff's excessive force claim.

B.  State Law Claims

Under Oregon law, a police officer is authorized to use reasonable force to effectuate a seizure without committing assault or battery. See Ballard v. City of Albany, 221 Or.App. 630, 640-41, 191 P.3d 679 (2008). Accordingly, the success of a plaintiff's assault and battery claims is contingent upon whether the use of force was excessive under the Fourth Amendment. Id.; see also Saman v. Robbins, 173 F .3d 1150, 1157 n.6 (9th Cir.

Page 15 - OPINION AND ORDER

1999). Because factual questions remain regarding whether Officer Huskey's use of force was excessive or otherwise reasonable under the circumstances, defendants' motion for summary judgment as to plaintiff's assault and battery claims is denied.

II. Claims Against Officer Woodward

Plaintiff next contends that Officer Woodward placed her in danger by not taking her to a treatment or detox facility pursuant to Or. Rev. Stat. § 430.399[7] "when it appeared she was intoxicated to the point of harming herself." Pl.'s Resp. to Mot. Summ. J. 37.

Generally, state actors are "not liable for . . . omissions" under 28 U.S.C. § 1983. Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000). As such, individuals generally do not have a constitutional "right to governmental aid even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989). This rule, however, is not without exception; a state actor can be liable for an omission where he or she affirmatively places plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger" (the

---

[7] Which states that "[a]ny person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance." Or. Rev. Stat. § 430.399(1).

"danger creation exception").[8] <u>Patel v. Kent Sch. Dist.</u>, 648 F.3d 965, 974 (9th Cir. 2011) (citations omitted). Deliberate indifference is a stringent standard of fault, requiring proof of "1) an unusually serious risk of harm, 2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and 3) defendant's failure to take obvious steps to address that known, serious risk." <u>L.W. v. Grubbs</u>, 92 F.3d 894, 900 (9th Cir. 1996).

Here, Officer Woodward was dispatched to the scene in response to a call that a passenger attempted to exit a moving vehicle and was physically prevented from doing so by the driver. <u>See</u> Woodward Decl. ¶ 2. Upon arrival, Officer Woodward recognized plaintiff and observed that she was intoxicated. <u>Id.</u> at ¶¶ 3-4. As he began talking to plaintiff, however, Officer Woodward determined that "she was not incapacitated in that she could clearly communicate, seemed to fully comprehend what was being said, was walking without any assistance and did not appear at that time to be a danger to herself or others." <u>Id.</u> at ¶ 4. Once Price and plaintiff's mother arrived on the scene, Officer Woodward asked Price if she would take care of her mother and she agreed. <u>Id.</u> at ¶ 6. Plaintiff was willing to go with Price and, further, consented to "pour out

----

[8] Another exception exists where there is a "special relationship" between the plaintiff and the state. It is unclear whether plaintiff is invoking this exception; however, she has not cited to, and this Court is not aware of, any authority indicating that placing an intoxicated person in the care of a willing family member creates a special relationship between that person and the state. Regardless, because the gravamen of plaintiff's claim is that Officer Woodward failed to take her into custody, this exception does not apply here. <u>See</u> <u>DeShaney</u>, 489 U.S. at 199-200 (exception applies when a state "takes a person into its custody and holds him there against his will").

[any remaining] alcohol without drinking more of it." Id. at ¶¶ 6, 11.

This evidence establishes that Officer Woodward carefully assessed the situation, was aware of his duties and authority under Or. Rev. Stat. § 430.399, and determined, within his discretion, that plaintiff was not incapacitated, in immediate danger, or a threat to herself or others. See id. at ¶ 11. Rather than leave plaintiff outside of the bar or take her into custody, Officer Woodward concluded that the best course of action was to place plaintiff in her daughter's care. Plaintiff fails to articulate how this action rendered her in a more dangerous situation or evinces a culpable mental state. In fact, plaintiff failed to provide any evidence in support of her claim. See Pl.'s Resp. to Mot. Summ. J. 37-39. The Court notes further that several hours elapsed and multiple intervening events occurred between plaintiff's interaction with Officer Woodward and her underlying head injury. Thus, even assuming that plaintiff was incapacitated, no reasonable jury could conclude that Officer Woodward's actions exposed plaintiff "to a danger which [she] would not have otherwise faced." Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007); see also Grubbs, 92 F.3d at 898-900 (negligence on the part of state officials, whether simple or gross, is not sufficient to establish liability for a due-process violation). Accordingly, defendants' motion is granted as to plaintiff's claim against Officer Woodward.

III. Claims Against Chief Mahler

Plaintiff asserts that Chief Mahler neglected to properly supervise Officer Huskey and improperly ratified his excessive use

of force.   Pursuant to 42 U.S.C. § 1983, officials may be held individually liable for their own culpable action or inaction in the training, supervision, or control of subordinates.  See Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted).  In excessive force cases, liability depends upon whether the supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury."  Blankenhorn, 485 F.3d at 485.   In other words, plaintiff must show a causal connection between the official's failure to train or supervise and the alleged constitutional violation.

Likewise, a supervisor's subsequent "ratification" of a subordinate's conduct can also form the basis for liability under 42 U.S.C. § 1983; however, the supervisor must actually approve of the subordinate's decision and the basis for it, and be the product of a "conscious, affirmative" choice to ratify the conduct in question.  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992), cert. denied, 510 U.S. 932 (1993); see also Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004) ("mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 [ratification] claim").

Here, Chief Mahler testified that, pursuant to his request, an independent, "inter-agency group composed of several other agencies including Douglas County Sheriff's deputies and the Oregon State Police" investigated Officer Huskey's conduct and found that his use of a Taser "was appropriate and proper."  Mahler Decl. ¶ 3

(internal quotations omitted). Based on the results of this investigation, Chief Mahler concluded that "disciplinary action was [not] appropriate under the circumstances." Id. In addition, Chief Mahler stated that "[i]t was the policy of the Sutherlin Police Department to train all officers in the use of the Taser prior to it being issued to them [and] to complete a Taser refresher training course every two years, at a minimum." Id. ¶ 4. Officer Huskey was initially Taser certified in December 2004 and underwent refresher training in December 2008 and August 2009. Id.; see also Felix Decl. ¶ 5.

Plaintiff failed to identify any facts or evidence indicating that Chief Mahler neglected to supervise or train officers in the use of Tasers or knew Officer Huskey was engaging in unconstitutional activity and approved of it nonetheless; in fact, plaintiff wholly neglected to brief her ratification claim. See Pl.'s Resp. to Mot. Summ. J. 30-31. Thus, the requisite causal connection between the failure to supervise or train and the constitutional violation at issue is absent in this case. Further, Chief Mahler did not affirmatively approve of Officer Huskey's use of excessive force, but rather failed to overrule his completed actions. As such, defendants' motion is granted as to the claims asserted against Chief Mahler.

IV. Claims Against Sergeant Felix

Plaintiff also argues that Sergeant Felix failed to properly supervise Officer Huskey. Because Sergeant Felix is being sued solely in his official capacity and the claim against him is duplicative of those asserted against the City, defendants' motion is granted and Sergeant Felix is dismissed as a redundant

Page 20 – OPINION AND ORDER

defendant. <u>See</u> <u>Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty.</u>
<u>Sheriff Dep't</u>, 533 F.3d 780, 799 (9th Cir. 2008) ("[w]hen both a
municipal officer and a local government entity are named, and the
officer is named only in an official capacity, the court may
dismiss the officer as a redundant defendant"). Even assuming that
Sergeant Felix is not a redundant defendant, plaintiff's claims
against him are dismissed for the reasons discussed in regard to
Chief Mahler.

V.   <u>Claims Against the City</u>

Plaintiff seeks to hold the City liable for Officer Huskey's
use of excessive force: (1) unofficial policy or custom that
promoted, allowed, or facilitated the use of excessive force; (2)
failure to train police personnel regarding the restraint and
control of agitated, injured, or intoxicated persons; and (3)
improper ratification of Chief Mahler's approval of Officer
Huskey's conduct. Plaintiff, however, does not brief these claims
separately and instead argues only that the City provided
inadequate training, of which the allegedly improper policy or
custom and illegal ratification are facets. <u>Compare</u> TAC ¶¶ 50-58,
<u>with</u> Pl.'s Resp. to Mot. Summ. J. 32-34. Initially, as discussed
above, because Chief Mahler did not ratify Officer Huskey's conduct
and the existence of a policy or custom is an element of a 42
U.S.C. § 1983 claim against a municipality, regardless of the
theory, the Court will focus on whether the City's training program
resulted in the deprivation of plaintiff's constitutional rights.

"The City may he held liable under section 1983 if its
deliberate policy caused the violation alleged." <u>Blankenhorn</u>, 485
F.3d at 483 (citing <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436

U.S. 658, 694 (1978)).  In order to establish a failure to train
claim against a municipality, the plaintiff "must show that (1) he
was deprived of a constitutional right, (2) the City had a training
policy that amounts to deliberate indifference to the
[constitutional] rights of the person with whom [its police
officers] are likely to come into contact; and (3) his
constitutional injury would have been avoided had the City properly
trained those officers."  Id. at 484 (citing Lee, 250 F.3d at 681)
(internal quotations omitted).  "Deliberate indifference in this
context requires proof that city policymakers disregarded the known
or obvious consequence that a particular omission in their training
program would cause city employees to violate citizens'
constitutional rights."  Connick v. Thompson, 131 S.Ct. 1350, 1354
(2011) (citation and internal quotations omitted).  Further, a
"pattern of similar constitutional violations by untrained
employees is ordinarily necessary to demonstrate deliberate
indifference."  Id. (citation omitted).

The record here demonstrates that the Sutherlin Police
Department had a policy to train all of its officers in the use of
a Taser prior to it being issued.  See Mahler Decl. ¶ 4.  In
addition, the policy required every officer to complete a Taser
refreshing course at a minimum of every two years.  Id.  As
discussed above, Officer Huskey received training in the use of his
Taser on several occasions, most recently two months prior to the
events involving plaintiff.  Id.  Similarly, Officer Woodward
testified that he had been trained in determining whether an
intoxicated person is incapacitated pursuant to Or. Rev. Stat. §
430.399.  See Woodward Decl. ¶ 11.

Plaintiff does not identify how this training was inadequate or caused the constitutional violations at issue; instead, plaintiff directs the Court to a specific type of training that she believes the City should have implemented: "The City has little to no training or education amongst its officers in dealing with the mentally impaired based on the indifferent and callous depositions given by the two keys officers." Pl.'s Resp. to Mot. Summ. J 34. Plaintiff, however, does not specifically cite any such testimony or identify any other evidence in support of her claims.[9] See id. at 33-34. Nonetheless, an independent review of the deposition testimony furnished by both sides belies plaintiff's contention. Without such evidence, no reasonable jury could conclude that Officers Woodward and Huskey were not adequately trained in their respective conduct, or that Chief Mahler knew of on-going constitutional violations and approved of them nonetheless. See City of Canton v. Harris, 489 U.S. 378, 390-91 (1989) ("the focus must be on the adequacy of the training program . . . that a particular officer may be unsatisfactorily trained" or that an injury could have been avoided with "better or more training" will "not alone suffice to fasten liability on the city"); see also Blankenhorn, 485 F.3d at 485 ("absent evidence of a program-wide inadequacy in training, any short-fall in a single officer's

---

[9] While plaintiff does not cite to any evidence in support of her claims against the City, she does allude to an "Oregon DPSST" force continuum policy in another portion of her brief. See Pl.'s Resp. to Mot. Summ. J. 22 ("[i]f the Sutherlin policies still rely on the 'force continuum' it is in violation of the constitutional standards and the present training by the state's police academy"). Plaintiff failed to furnish proof of this policy, its terms, or defendants' compliance with it and, as such, she cannot maintain a claim against the City on this basis.

training can only be classified as negligence on the part of the municipal defendant - a much lower standard of fault than deliberate indifference") (citation and internal quotations omitted).

In sum, there is no evidence that the City disregarded a known or obvious consequence in training its employees concerning Taser usage or engaging with the intoxicated, or exhibited a pattern of similar constitutional violations, and, accordingly, defendants' motion is granted as to plaintiff's 42 U.S.C. § 1983 claims against the City.

VI.    <u>Malicious Prosecution Claims Under State and Federal Law Against Officer Huskey and the City</u>

Lastly, plaintiff contends that the City maliciously prosecuted her for interference with a peace officer based on "the false statements, reports, and actions by Huskey to the prosecutor." Pl.'s Resp. to Mot. Summ. J. 37. Lack of probable cause is a requisite element for both state and federal malicious prosecution claims. <u>See</u> <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1066 (9th Cir. 2004) (elements of a malicious prosecution claim under federal law); <u>Blandino v. Fischel</u>, 179 Or.App. 185, 189-90, 39 P.3d 258, <u>rev. denied</u>, 334 Or. 492, 52 P.3d 1057 (2002) (elements of a malicious prosecution claim under Oregon law). As discussed above, Officer Huskey had probable cause to cite plaintiff for interfering with a peace officer and "had no input or consultation with the City's prosecutor on whether to prosecute the citation." Huskey Decl. ¶ 11. As such, plaintiff's malicious prosecution claims fail as a matter of law. Further, to the extent that plaintiff argues that Officer Huskey perjured himself or

Page 24 - OPINION AND ORDER

issued false police reports, her claim also fails as a matter of law. See Rosenfeld v. Corvallis Police Dep't, 2013 WL 1857108, *6 (D.Or. May 1, 2013) (citations omitted). Therefore, defendants' motion is granted in this regard.

CONCLUSION

Defendants' motion for summary judgment (doc. 60) is GRANTED in part and DENIED in part as follows: DENIED as to plaintiff's excessive force, assault, and battery claims against Officer Huskey; and GRANTED in all other respects. Accordingly, Officer Woodward, Sergeant Felix, Chief Mahler, and the City are DISMISSED as defendants from this action.

IT IS SO ORDERED.
Dated this ___ day of May 2013.


_____
Ann Aiken
United States District Judge